**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR EUROBANK,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**RAFAEL ARRILLAGA-TORRÉNS, JR.,** *et al.*;<br><br>        **Defendants.** | **Case No. 13-01328CCC** |

**FDIC-R'S SUR-REPLY TO LIBERTY MUTUAL INSURANCE
COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE COURT:

Subject to the Court granting FDIC's Motion for Leave to File Sur-Reply (ECF No. 111), the Federal Deposit Insurance Corporation as Receiver for Eurobank of San Juan, Puerto Rico ("FDIC-R") submits this Sur-Reply to Liberty Mutual Insurance Company's Motion for Judgment on the Pleadings (hereinafter referred to as the "MJP") (ECF No. 73) and corresponding Reply Memorandum (ECF No. 102).  In support of this Sur-Reply, FDIC-R states as follows:

**I.  The phrase "on behalf of" is, at a minimum, ambiguous.**

Analogizing the failed Eurobank to a deceased individual, Liberty recognizes that any recovery by FDIC-R in this matter will not benefit the bank, but rather its "'surviving heirs' such as the Bank's creditors and depositors."  Reply Memorandum at 5.  Liberty thus concedes that FDIC-R acts solely "for the *benefit* of third parties" and not for an Insured under Liberty's D&O policy.  *Id*.  As explained below, this concession single-handedly defeats application of the Insured v. Insured ("IvI") exclusion.

1

Liberty contends that there is no coverage for FDIC-R's claims in this matter because it is suing "on behalf of" Eurobank, an insured under Liberty's policy.  But Liberty limits its definition of "on behalf of" to "as the agent of" and considers it dispositive that Eurobank was the original owner of the claims.  Reply Memorandum at 3-4.  Liberty's definition is too narrow. Many courts have held that "on behalf of" also means "*for the benefit of*."  *See Madden v. Cowen & Co*., 576 F.3d 957, 973 (9th Cir. 2009) (citing Webster's Third New Int'l Dictionary to conclude that the ordinary meaning of "on behalf of" is "in the interest of," "as a representative of," or "**for the benefit of**") (emphasis added); *Olelo: The Corporation for Community Television v. Office of Information Practices*, 173 P.3d 484, 497 (Hawaii 2007) (same); *Occidental Fire & Cas. Co. of North Carolina v. Soczynski*, 2013 WL 101877 at *12 (D. Minn. 2013) (same); *Kyle W. Larson Enterprises, Inc. v. Allstate Ins. Co*., 305 P.3d 409, 412 (Colo. App. 2012) (same); *Housing Authority of City of Dallas v. Killingsworth*, 331 S.W.3d 806, 811 (Tex. App. 2011) (same); *In re Estate of Miller*, 143 P.3d 315, 320 (Wash. App. 2006) (same); *Havi Group LP v. Fyock*, 131 P.3d 793, 795 (Or. App. 2006) (same); *Jamison v. First Credit Services, Inc*., 290 F.R.D. 92, 99 (N.D. Ill. 2013) (citing Merriam Webster's Collegiate Dictionary to conclude that "on behalf of" means either "as the agent or representative of" or "in the interest or **for the benefit of**") (emphasis added).

Given that many courts and dictionaries say that "on behalf of" means "for the benefit of," a reasonable interpretation of the IvI exclusion in Liberty's policy is that it excludes coverage for claims "[b]rought or maintained by or [for the benefit of]" an Insured.  Even if there are other possible interpretations of the phrase "on behalf of" (such as those Liberty advances), it is, at a minimum, ambiguous.  *See Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 33 n.1 (1st Cir. 1998) (noting that "[u]nder Puerto Rico law, 'ambiguous' means reasonably susceptible to more than one interpretation.")  Accordingly, Liberty's argument for application of the IvI

exclusion in this case collapses under the weight of two undisputed facts.  First, by Liberty's own admission, the claims asserted in this case are not for the benefit of an Insured.  Second, "on behalf of" can be reasonably interpreted to mean "for the benefit of."  Under Puerto Rico law, any ambiguities in an insurance contract must be construed in favor of coverage, and thus Liberty's attempt to escape coverage under the IvI exclusion must be rejected.  *Marina Aguila v. Den Caribbean, Inc.* 490 F. Supp. 2d 244, 248 (D. P.R. 2007).

## II.  The IvI exclusion does not address the capacity in which FDIC-R acts.

Liberty dismisses the fact that FDIC-R acts in multiple capacities (a fact that Judge Gelpi found compelling in rejecting Liberty's previous attempt to utilize the IvI exclusion in *W. Holding Co., Inc. v. Chartis Ins. Co., et al.,* 904 F. Supp. 2d 169, 183 (D.P.R. 2012)) by disingenuously stating that the IvI exclusion in this policy (unlike the one in *W. Holding*) "applies to claims by third parties acting '***in any capacity***.'"  Reply Memorandum at 1 (emphasis added).  The exact language of the policy is worth revisiting in light of Liberty's argument.  The provision excludes coverage for any claim "brought or maintained by or on behalf of the Insured Organization or any Insured Person, ***in any capacity*** . . . (emphasis added).  Liberty contends that the phrase "in any capacity" means that the IvI exclusion in this case "plainly applies regardless of the 'capacity' in which the FDIC is bringing suit."  Reply Memorandum at 17.  But this is an obvious misconstruction of the provision.

The phrase "in any capacity" modifies the phrase "Insured Organization or any Insured Person."  It does not pertain to "third parties" as Liberty contends.  This is a matter of simple sentence construction.  The language of the exclusion has nothing to do with the capacity in which FDIC-R or any other third party acts.  Instead, the phrase "in any capacity" is to make clear that the IvI exclusion applies to any claim brought or maintained by or on behalf of an Insured, regardless of the capacity ***of the Insured*** in which the claim is brought.  Because FDIC-

3

R is not an Insured Organization or Insured Person, the phrase "in any capacity" does not address the "capacity in which the FDIC is bringing suit," and thus FDIC-R's argument regarding its multiple capacities is as robust in this case as it was when Judge Gelpi considered it in *W. Holding*.

**III.     In approving the loss loans, the Director Defendants were acting in their capacities as Directors of Eurobank.**

The basic gist of Liberty's argument on pages 22 – 27 of its Reply Memorandum is that the approval of loans by a bank director is outside the scope of his duties and thus is not covered by the D&O policy.  Of course, what the D&O policy covers is determined by the D&O policy itself, not Liberty's rhetoric.  Paragraph 1.1 of the Policy states that "[t]he Insurer shall pay on behalf of the **Insured Persons** all **Loss** which they shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** . . . against the **Insured Persons** for **Wrongful Acts**. . . ."  A Director is an Insured Person.  D&O Policy, ¶ 25.10(a).  Moreover, Wrongful Act is defined in the Policy as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged committed or attempted by the **Insured Persons** in their capacities a such **. . . ."**  D&O Policy, ¶ 25.20(a).  Accordingly, the negligence of an Insured Person in his capacity as such is a Wrongful Act and is thereby covered under the Policy.  Did FDIC-R make allegations in its Complaint that the Directors' acts fall within coverage?  Yes.  FDIC-R alleged that the Directors approved the loss loans in their capacities as Directors.  *See* ¶¶'s 34-36, 74 and 80 of FDIC'R's Complaint.  FDIC-R further alleged that this conduct constituted gross negligence.  *See id.* at ¶¶'s 78-82.  Does the Policy Liberty drafted exclude the approval of loans as a Wrongful Act?  No.  Hence, there is coverage for FDIC-R's claims.

The flaw in Liberty's argument is that it conflates legal duty with the applicability of the Professional Services Exclusion ("PSE").  What Liberty subtly argues when it states that

directors have no duty to approve loans, and that when they do approve loans they are not acting in a covered capacity, is that directors of a federally insured financial institution do not owe the banks they serve a duty of care when they take upon themselves the responsibility of approving loans.   No authority supports this claim.   Moreover, FDIC-R in paragraph 79 of its Complaint lists nine duties the Directors owed Eurobank.   Paragraph 80, lists nineteen examples of how they breached these duties.   In the face of these allegations, Liberty fails to offer a single case that states that the Directors of a bank do not owe a duty to the bank to make sure that extensions of credit comply with the bank's loan policy and are in the best interest of the bank.

Liberty does cite several cases and an OCC article for the unremarkable proposition that a director has oversight and supervisory responsibility over the bank.   The FDIC has no quarrel with these authorities.   Indeed, the OCC article notes that directors have the responsibility of approving the bank's loan policy and approval authority.   This is exactly what occurred with Eurobank.   The directors approved the loan policy, and it contained a requirement that the Directors approve loans that exceeded a certain dollar amount.   *See* FDIC-R Complaint at ¶ 20. The best Liberty could come up with is an article by the Executive Director of the American Association of Bank Directors ("AABD"), which Liberty cites for the idea that it is not a board's role to approve loans.   Besides the fact that this "unbiased" article is not legal authority and is thus is at best evidence that is outside the pleadings, the selected quote is taken out of context. As noted in the article, the statement from the AABD was in response to the decision of the RTC in the early 1990's to sue directors for their approval of bad loans.   The point of the article is that it might be better for directors not to approve loans so as to avoid potential lawsuits when the bank fails.   The article in no way stands for the proposition that when the directors do in fact approve loans that they are no longer acting as a director in an insured capacity.   Indeed, the

article notes that it is commonplace for directors to approve loans that are over a certain amount or that do not conform to the bank's loan policy.

**IV.     In approving the Loss Loans, the Director Defendants were not rendering professional services "to or on behalf of any customer or client."**

Perhaps seeing the fallacy of its argument, Liberty asserts that by taking on the responsibility to approve loans, the Director Defendants were acting as *de facto* loan officers and hence were providing professional services to a customer.  There are numerous problems with Liberty's position.  First, it offers no legal authority for the argument that directors become *de facto* loan officers when they approve loans.  Second, any assertion by Liberty that the Director Defendants in this case were acting as loan officers is outside the pleadings and is thus improper for the Court to consider.  *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  Third, so what if the Director Defendants were acting as loan officers?  Loan officers are also covered under the Policy.  D&O Policy, ¶ 25.10(a).  Moreover, when a bank makes a loan, it is not performing a professional service for a customer or client.[1]

Indeed, Liberty fails to cite a single case where a court has held that directors are providing a professional service to a customer when they approve loans.  Rather, in the cases Liberty cites the defendant was providing a service directly to the plaintiff.  The case of *Rupracht v. Certain Underwriters at Lloyd's of London*, 2012 WL 4472158 (D. Nev. September 25, 2012), which Liberty relies on both in its original motion and its reply brief, illustrates this point.  Rupracht sued Gary Armitage who was a director in the brokerage firm ePlanning, Inc. *Id.* at *1, 4.  Armitage had insurance under a D&O policy.  The court granted the carrier's motion to dismiss the lawsuit based on the professional services exclusion in the policy.  The court did so, however, not based on Armitage's role as a director but because Armitage was

---

[1] This fact was amply demonstrated in FDIC-R's original response at pages 22-26 and will not be repeated here.

Rupracht's financial advisor and the complaint alleged that Armitage had mismanaged Rupracht's investment. *Id.* Indeed, Rupracht alleged that in his role as advisor Armitage had "shepherded Rupracht's life insurance investments from one risky position to another, letting at least one policy lapse in the process." *Id.* at *5. The court thus held that by managing Rupracht's investments, Armitage was providing a professional service under California law. *Id.*

Contrary to the situation in *Rupracht,* there are no allegations in this case that the Director Defendants in approving loans were rendering any professional service to or on behalf of a customer. As shown in FDIC-R's Response, they were acting on behalf of Eurobank in their roles as directors. The *Rupracht* court understood this difference when it observed that when applying the PSE, you have to separate Armitage's role as financial advisor from his role as a director of ePlanning. *Id.* at *4-5. The clear indication from this statement is that if Armitage had been sued for his acts as a director that the PSE would not apply. This indication is further evidenced by the fact that the court granted Rupracht leave to amend in order to allege claims that do not fall within the PSE.

### V.  The approval of loans does not constitute a "professional service."

Besides the fact that the Director Defendants in approving loans were not rendering any professional services to or on behalf of a customer, the lending of money is not a professional service. In the case of borrowing money, customers do not go to banks because the banks have specialized knowledge, skill, or expertise. Customers go to banks because that's where the money is. The borrower simply wants money; it is not looking for advice on how to use the money or where to invest it. In fact, an ordinary citizen without an ounce of specialized knowledge, skill, or expertise – but nonetheless a sufficient amount of money and a willingness to lend it – could as easily meet the borrower's needs as could a bank. And if someone with no knowledge, skill, or expertise could satisfy the request as completely and effectively as a bank,

then the request clearly was not seeking a professional service.  Simply making the decision to give someone a tangible item that they request does not constitute the rendering of a professional service to or on behalf of the person no matter how much thought and analysis goes into making the decision and no matter whether the profession of the party receiving the request requires specialized knowledge, training, and skills.

So when Liberty states that "banking – in all its various forms and permutations – is clearly a vocation requiring such specialized knowledge, training, and skills," it is missing the point.  The relevant question in deciding whether the PSE applies is not whether the banking profession as a whole requires specialized knowledge, training, and skills, but rather whether the particular act at issue – i.e., approving a loan to a borrower – constitutes a professional service to or on behalf of the borrower.  It clearly does not.  That is not to say that specialized knowledge or expertise does not go into the decision as to whether to lend the money, but that knowledge and expertise is being rendered to and on behalf of the bank – not the borrower.  It is no different than the situation where an individual wants to rent an apartment.  The apartment owner might have an employee review the application, check credit references, and contact prior landlords in order to determine whether the apartment owner wants to allow the individual to rent the apartment.  Those services – i.e., the "underwriting and approval" of the rental application – would be rendered to or for the benefit of the apartment owner, not the applicant.

Courts have recognized this important distinction.  For example, in *Bohreer v. Erie Ins. Group,* 475 F. Supp.2d 578, 585 (E.D. Va. 2007), the court aptly noted that in construing a PSE a court must determine whether the lawsuit (1) arises out of a service (2) that requires some type of special learning or attainment.  The case at bar does not arise out of any service; it arises out of the Director Defendants' acts of gross negligence in approving the loss loans.  Moreover, the

decision to make the loan is a business decision that doesn't require any type of specialized skill or knowledge.

The fact that approving loans is not a professional service is underscored by the Puerto Rico Internal Revenue Code, which states that "designated professional services" means "legal services and the following professional services . . . (1) Agronomists; (2) architects and landscape architects; (3) certified public accountants: (4) real estate brokers, salespersons and companies; (5) professional draftsmen; (6) professional real estate assessor; (7) geologists, and (8) engineers and surveyors." 13 L.P.R.A. § 32001(11).  This definition makes no mention of a bank director or loan officer.

**VI.**     **At the very least, it is ambiguous as to whether the PSE applies to the FDIC-R's claims against the Director Defendants.**

Several things show the PSE is ambiguous.  The term is not defined in the policy.  As a result, whether the PSE applies to the facts presented in the FDIC-R's lawsuit is certainly susceptible to more than one interpretation.  *Lopez & Medina Corp. v. Marsh USA, Inc.*, 667 F.3d 58, 64 (1st Cir. 2012).   This fact is further demonstrated in that the broad grant of coverage in the insurance clause stands in direct contradiction to the expansive application of the PSE that Liberty seeks.  Moreover, Liberty has been unable to cite to the Court any case where a court held that the PSE applied to claims by the FDIC against bank directors for approving bad loans.[2] Instead, in every case cited by Liberty, the facts involved a suit by a customer of the insured for a service the insured provided to the customer (this is true in every case Liberty cites in its argument that the exclusion is not ambiguous).  Finally, if it takes eighty pages of briefing to explain why a policy is not ambiguous, then this is pretty clear evidence that it is in fact ambiguous.

---

[2] The case of *Terre Haute First Nat'l Bank v. Pacific Employers Ins.*, 634 N.E.2d 1336, 1339 (Ct. of App. Ind. 1993) provides an example of when a PSE is applicable against a bank.

**VII.   Liberty's expansive application of the PSE renders the coverage in the D & O Policy illusory.**

Liberty cites numerous cases that have held that PSE's do not render coverage under an insurance policy illusory.  Of course, in each of these cases it was the customer who was suing the insured in connection with a service the insured provided.  That is not the case here.  Moreover, Liberty basically acknowledges on page 38 of its Reply Memorandum that the policy Eurobank purchased only covers the Director Defendants in cases (1) brought by a bank customer/client; (2) for the Directors failure to properly supervise professional services provided to the bank customer/client; and/or (3) is based upon the improper disclosure or nondisclosure of material information relating to the professional services.  Other courts have held, however, that similar expansive applications of a PSE vitiate coverage and render it illusory.  *Federal Ins. Co. v. Hawaiian Elec. Indus.*, 1997 U.S. Dist. LEXIS 24129 at *32-34 (D. Haw. December 23, 1997).  The same is true here.

WHEREFORE, for all of the reasons discussed above and those set forth in its initial response, FDIC-R respectfully requests that the Court deny Liberty's Motion for Judgment on the Pleadings.

Respectfully submitted in San Juan, Puerto Rico on February 14, 2014.

/s/ *Jairo Mellado-Villarreal*
**MELLADO & MELLADO-VILLARREAL**
Jairo Mellado-Villarreal, 208112
165 Ponce de León Ave., Suite 102
San Juan, Puerto Rico 00917-1233
Tel. 787-767-2600/Fax 787-767-2645
E-mail:  jmellado@mellado.com

**MULLIN HOARD & BROWN, LLP**
Clint R. Latham (TX Bar No. 24013009)
Robert R. Bell (TX Bar No. 00787062)
*admitted pro hac vice*
500 South Taylor, Suite 800
Amarillo, Texas  79101
Tel. 806-372-5050/Fax 806-372-5086
Email:clatham@mhba.com
           rbell@mhba.com

Steven C. Morrison, Esq., G01713
Federal Deposit Insurance Corporation
3501 N. Fairfax Dr. Ste. B7024
Arlington, VA 22226
Tel. 703-516-5029 Tel. 904-256-3854
E-mail:  stemorrison@fdic.gov

*Counsel for the FDIC as Receiver of Eurobank*

### CERTIFICATE OF SERVICE

I hereby certify pursuant to L.Cv.R. 5.1 (b) (2) that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

/s/ *Jairo Mellado-Villarreal*
**MELLADO & MELLADO-VILLARREAL**
Jairo Mellado-Villarreal, 208112
165 Ponce de León Ave., Suite 102
San Juan, Puerto Rico 00917-1233
Tel. 787-767-2600/Fax 787-767-2645
E-mail:  jmellado@mellado.com