# IN THE UNITES STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Eurobank, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RAFAEL ARRILLAGA-TORRÉNS, JR.; et al., | ) ) |
| Defendants, | ) ) |

CIVIL No. 13-1328 (CCC)

Gross Negligence, Declaratory Judgment, Damages

LIBERTY MUTUAL INSURANCE COMPANY

    Counter-Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Eurobank,

    Counter–Defendant.

LIBERTY MUTUAL INSURANCE COMPANY

    Cross-Plaintiff,

    v.

RAFAEL ARRILLAGA-TORRÉNS, JR.; et al.,

    Cross-Defendants.

## LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO STRIKE THE FDIC-R'S SUR-REPLY TO LIBERTY'S MOTION FOR JUDGMENT ON THE PLEADINGS

**TO THE HONORABLE COURT:**

COMES NOW, co-defendant Liberty Mutual Insurance Company ("Liberty"), by and through its undersigned legal counsel, and respectfully avers and prays as follows:

## <u>INTRODUCTION</u>

1.     The FDIC-R's Surreply is nothing more than an attempt to have the "last word" before this Court makes a decision on Liberty's Motion for Judgment on the Pleadings.  Specifically, the FDIC-R's Surreply does not respond to any alleged "new facts, evidence or arguments" presented by Liberty in its Reply in Support of its Motion for Judgment on the Pleadings as suggested in the FDIC-R's Motion for Leave to File Surreply.  <u>See</u>, **Docket Entry No. 111**.  Notably, the FDIC-R's Surreply addresses *none* of its three stated purposes in its Motion for Leave: "(1) address arguments asserted by Liberty for the first time in its Reply; (2) to correct Liberty's misunderstanding and mischaracterizations of the FDIC-R's arguments; and (3) to distinguish the numerous new, but irrelevant, cases cited by Liberty."  *Id.*, pp. 1-2.

2.     First, in its Surreply, the FDIC-R, again, does not state what new arguments Liberty raised in its Reply, nor does it address any alleged new arguments raised by Liberty.  This is because Liberty raises no new arguments in its Reply.  Second, the FDIC-R does not "correct Liberty's misunderstandings and mischaracterizations of the FDIC-R's arguments."  Rather, the FDIC-R's Surreply is an entirely *new* brief raising *new* issues.  Finally, the FDIC-R properly abandons its contention that Liberty raised "numerous new, but irrelevant, cases."  Indeed, it is the FDIC-R who cites to twelve (12) new cases in its Surreply that were not raised in Liberty's Motion for Judgment on the

2

Pleadings, Reply in Support of Motion for Judgment on the Pleadings, or the FDIC's Opposition.

3.      This Court should not award such maneuvering and blatant violations of the rules by the FDIC-R in allowing its Surreply to stand.  Because the FDIC-R's Surreply is improper in its entirety, this Court should strike the FDIC-R's Surreply.

## **PROCEDURAL HISTORY**

Liberty filed its Motion for Judgment on the Pleadings ("MJP") and Motion for Leave to file Excess Pages of Brief in Support of Motion for Judgment on the Pleadings on October 17, 2013.  See, **Docket Entry Nos. 72** and **73**.  On October 30, 2013, both the FDIC and Director Defendants filed Motions for Extension of Time until November 22, 2013 to file Responses to Liberty's MJP.  See, **Docket Entry Nos. 81** and **82.**  Defendant Rafael Arillaga-Torrens, JR. filed a Motion for Extension of Time to file its Response to Liberty's MJP on November 11, 2013.  See, **Docket Entry No. 84**.  The FDIC-R filed a second Motion for Extension of Time to file its Response to Liberty's MJP on November 21, 2013.  See, **Docket Entry No. 86**.  The Director Defendants filed a second Motion for Extension of Time until December 3, 2013 to file its Response to Liberty's MJP on November 25, 2013.  See, **Docket Entry No. 87**.  Notably, the FDIC-R and Director Defendants were only filing one reply each in response to Liberty's MJP.

The FDIC-R filed its Response in Opposition to Liberty's MJP and Motion for Leave to File Excess Pages on December 2, 2013.  See, **Docket Entry Nos. 88** and **89**. The Director Defendants filed their Response in Opposition to Liberty's MJP and Motion for Leave to File Excess Pages on December 3, 2013.  See, **Docket Entry Nos. 91** and **92**.  Defendant Rafael Arillaga-Torrens, Jr. filed a Motion for Joinder of the FDIC-R's

3

and Director Defendants' Oppositions to Liberty's MJP on December 24, 2013.  See, **Docket Entry No. 95**.  Subsequently, Liberty filed two extensions of time to file its Reply in Support of its MJP – specifically because it was filing a ***Joint Reply*** addressing both the FDIC-R's and Director Defendants' arguments raised in their oppositions – on December 10, 2013 and January 7, 2014, respectively.  See, **Docket Entry Nos. 93** and **96**.  Ultimately, Liberty filed its ***Joint Reply*** in Support of its MJP and Motion for Leave to File Excess Pages on January 31, 2014.  See, **Docket Entry Nos. 102** and **103**.  As addressed in Liberty's Motion for Leave to File, Liberty filed a ***Joint Reply*** in the interests of judicial economy and to avoid duplication of efforts as there was significant overlap between the FDIC-R's arguments and the Director Defendants' arguments raised in their respective oppositions.  See, **Docket Entry No. 103**.  This Court granted both of Liberty's requests for leave to file excess pages for its Memorandum in Support of its MJP and for its ***Joint Reply*** in Support of its MJP on February 6, 2014.  See, **Docket Entry No. 109**.

On February 7, 2014, both the FDIC-R and Director Defendants filed Motions for Leave to File Surreplies essentially alleging that Liberty raised new arguments that warranted Surreplies.  See, **Docket Entry Nos. 110** and **111**.  Liberty opposed both of these motions on February 12, 2014.  See, **Docket Entry Nos. 112** and **113**.

The FDIC-R has not demonstrated that Liberty has raised any new arguments. Indeed, as noted above, the FDIC-R fails to address any of the alleged purposes for filing its Surreply set forth in its Motion for Leave to File Surreply.  See, **Docket Entry No. 111.**  The FDIC-R, however, has raised new issues in its Surreply that should have been raised in its Opposition – the appropriate forum for such arguments – and is merely

4

attempting to have the "last word." This cannot stand. Thus, this Court should strike the FDIC's Surreply.

## LEGAL ARGUMENT

### I.  THE FDIC-R's Surreply Exceeds the Scope of Liberty's Reply

Raising new arguments, facts or evidence in a Surreply is inappropriate under Local Rule 7(c) and relevant case law.  *See* L.R. 7(c); *see also Shell Co., Ltd. v. Los Frailes Serv. Station, Inc.*, 596 F. Supp. 2d 193, 201, n. 7 (D.P.R. 2008); *Wills v. Brown Univ.,* 184 F.3d 20, 26 (1st Cir. 1999); *Rivera Concepcion v. Puerto Rico,* 682 F. Supp. 2d 164, 169 n.5 (D.P.R. 2010).  Moreover, many courts have held that Surreplies are *disfavored*, and are simply a strategic effort by the party seeking to file a Surreply to have the "last word."  *See In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 691 (S.D. Tex. 2006); *see also, Gabriela Rios DaSilva v. One, Inc. d/b/a The Wings Family Rest.*, No. 12-1286, 2013 U.S. Dist. Lexis 160566, *7 (D.P.R. Oct. 7, 2013) (holding that "[S]urreplies are strongly discouraged by the Court and should only be filed if absolutely necessary").[1]

In the instant case, the FDIC-R is merely attempting to have the final say before the Court rules on Liberty's MJP as it is clear from its Surreply that Liberty has not raised any new arguments, facts or evidence.  Ironically, it is the FDIC-R that is raising new arguments that it could have, and should have, addressed in its Opposition to Liberty's

---

[1]     *See also, Barnes v. D.C.*, 289 F.R.D. 1, 22 (D.D.C. 2012) *citing Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011) (holding that Surreply is generally disfavored); *Wright ex rel. Trust Co. of Kan. v. Abbott Lakes*, 62 F. Supp. 2d 1186 (D. Kan. 1999) (holding that Surreply is disfavored, normally only if invited by court); *Schmidt v. Sash*, 696 F. Supp. 2d 44 (D.D.C. 2010)(holding that a Surreply is not authorized by local rules); *Koken v. Auburn Mfg., Inc.*, No. 02-83-B-C, 2004 WL 51099, *6 (D. Me. Jan. 9, 2004) (denying motion to file surreply because the request was "simply an effort to have the last word.  The vast majority of its proposed surreply memorandum echoes prior submissions."); *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) ("Surreplies, and any other filings that serve the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter.  The court has found that surreplies usually are not that helpful in resolving pending matters.").

Reply in Support of its Motion for Judgment on the Pleadings.  Further, the FDIC-R cites to new case law that was not raised in any of the briefs before the FDIC-R's Surreply. Surreply, pp. 2, 6 and 8.  Oddly, it is the very assertion that the FDIC-R accused Liberty of doing and one of the bases it allegedly needed to file a Surreply.  Yet, the FDIC-R does not address *any* of the allegedly "new" and "irrelevant" case law cited by Liberty in its Surreply.  Rather, as demonstrated below, the FDIC-R asserts new arguments and mischaracterizes Liberty's arguments raised in its MJP and Reply – essentially drafting a new brief.  Because the FDIC-R has improperly used Local Rule 7(c) as a vehicle to file a new brief, not a Surreply, and because Surreplies are ***disfavored***, this Court should strike the FDIC-R's Surreply.

## II.     The FDIC-R Mischaracterizes Liberty's Argument and Includes New Arguments Relating to the Phrase "On Behalf Of"

In its Surreply, the FDIC-R essentially argues that the phrase "on behalf of" is ambiguous, and thus, this Court should reject Liberty's "IvI" argument in favor of coverage.  Surreply, pp. 1-3.  In support thereof, the FDIC-R wrongly asserts that Liberty concedes that the FDIC-R acts solely "'for the *benefit* of third parties' and not for an Insured under Liberty's D&O policy."  Surreply, p. 1.  Nowhere in Liberty's Reply does it concede that the FDIC acts solely for the benefit of "third parties."  Rather, the FDIC-R has mischaracterized Liberty's argument raised in its MJP, and subsequently addressed in its Reply in Support of its MJP, in attempt to confuse the issues and to set forth a new brief characterizing it as a Surreply.  In addition, the FDIC-R's entire section regarding the "on behalf of" language includes nine (9) new cases that were not cited in Liberty's MJP, Liberty's Reply in Support of its MJP, the FDIC-R's opposition, or the Director

Defendants' Opposition. This is the very same thing that the FDIC-R brazenly accused Liberty of doing in its Motion for Leave to File Surreply. See **Docket #111**, pp. 1-2.

Significantly, this entire section of the FDIC-R's Surreply mischaracterizes Liberty's comparison of those lawsuits brought on behalf of a guardian versus those brought under the Survival Act. The crux of Liberty's argument is that the FDIC-R's claim would not exist but for injury to Eurobank. While the FDIC-R has been charged with bringing Eurobank's claim on Eurobank's behalf, the claim does not originate with the FDIC-R. Rather, the Insured is still the owner of the claim despite a third-party bringing the claim on its behalf. Liberty asserted, in its MJP and Reply, that while the third-party representative may *indirectly* benefit from the claim through receipt of damages or settlement, the claim still belonged ***solely*** to the Insured. Like a decedent's estate, the FDIC-R would not have independent standing to bring these claims if Eurobank did not sustain the injury. As a result, the FDIC-R's entire argument regarding the phrase, "on behalf of," is a red-herring. Surreply, pp. 1-3. Because the FDIC-R should have addressed this argument in its Opposition, and because of its blatant mischaracterization of Liberty's argument, this Court should strike the FDIC-R's Surreply.

### III.   The Insuring Clause in the Policy Restricts Coverage for D&Os Acting in their Covered Capacities

Under commonly accepted rules of insurance contract construction, the Insured (or the FDIC-R in this case) has the burden of proving that a claim falls within the Insuring Clause of the policy. *OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada*, 684 F.3d 237, 242 (1st Cir. 2012). The FDIC fails to meet its burden. As

noted in Liberty's MJP and supporting briefs (see, **Docket Entry Nos. 72** and **102**), Insuring Clause 1.1 of Liberty's D&O Policy only affords coverage for a Wrongful Act by an Insured Person.  See, **Docket Entry No. 72**, pp. 5-6.  The definition of a covered Wrongful Act is limited to acts, errors or omissions "committed by the Insured Persons in their *capacities* as such."  (Policy, Section 25.20).  For purposes of coverage, the capacity of the Director Defendants is a threshold issue.  As explained at length in Liberty's MJP briefs, the Director Defendants were acting outside the scope of their covered capacities when they took it upon themselves to review and approve each of the Loss Loans at issue in the FDIC Complaint.  See, **Docket Entry No. 73**, pp. 29-40; **Docket Entry No. 102**, pp. 22-40.

## IV.    The Professional Services Exclusion Makes a Clear Distinction between the Covered and Uncovered Capacity of the D&Os

Article 11.250 of the Insurance Code states that every insurance policy shall be construed according to the entirety of its terms and conditions.  P.R. LAWS. ANN. tit. 26, § 1125.  Contrary to the FDIC's bald assertion, the mere fact that the Directors are being sued does not mean they are being sued for a covered Wrongful Act in their covered capacity within the meaning of the Policy.  Otherwise, virtually *any* act, error or omission by the Director Defendants would give rise to coverage under a D&O policy.  The Directors did not purchase unlimited D&O coverage.  Here, the covered capacity of the Directors is restricted, in part, by the Professional Services Exclusion ("PSE") in the Policy.  The purpose of this exclusion clearly contemplates separating the covered versus uncovered roles (or capacity) of a director or officer.  *Rupracht v. Certain Underwriters at Lloyd's,* No. 11-cv-00654, 2012 U.S. Dist. LEXIS 137098 (D. Nev. Sept 25, 2012).

8

The court in *Rupracht*, for instance, rejected as nonsensical the same circular reasoning proposed here by the FDIC-R.   Here, the FDIC-R states, in a conclusory fashion, that any claim against an Insured Person who happens to be a Director must be a claim against him for a covered Wrongful Act.   ("Accordingly, the negligence of an Insured Person in his capacity as such is a Wrongful Act and is thereby covered under the Policy.").  See, **Docket Entry No. 117**, p. 4.  Such logic defies reason.  As the *Rupracht* court astutely observed:   "While these misdeeds are included in the definition of 'Individual Act,' they are subject to an important modifier:   directors and officers are liable for these misdeeds only 'while acting in their capacity . . . as a director or officer.'" *Rupracht*, No. 11-cv-00654, 2012 U.D. Dist. LEXIS at *4.   Any other interpretation would lead to the illogical conclusion that "all errors, omissions, misstatements, misleading statements, negligence and breaches of duty are covered under the D&O policy. . . ." *Id.*

Moreover, contrary to the FDIC-R's assertion, the fact that *Rupracht* involved a claim brought by a customer (as opposed to the FDIC-R) is of no moment.  As discussed below, the PSE in the D&O Policy at issue carves-out coverage for claims by customers in certain contexts.  Moreover, several of the cases cited in Liberty's MJP briefs upheld similar professional services exclusions in D&O policies with respect to claims brought by third parties and government entities.  See, **Docket Entry No. 102**, pp. 29-30.[2]

---

[2]     *See e.g., David Lerner Assoc. v. Phila. Indem. Ins. Co*., 934 F.Supp.2d 533, *aff'd* at 2013 U.S. App. LEXIS 23386 (2d Cir. Nov. 21, 2013 (upholding professional services exclusion in D&O policy for suit brought by FINRA); *Tagged, Inc. v. Scottsdale Ins. Co*., 2011 WL 2748682 (S.D.N.Y. May 27, 2011) (upholding professional services exclusion in D&O policy for suit brought by the New York Attorney General); *Aetna Cas. & Sur. Co. v. Dannenfeldt*, 778 F. Supp. 484 (D. Az. 1991) (professional services exclusion in D&O policy applied to claims against directors and officers of a failed bank placed into receivership by the Resolution Trust Corporation); *MDL Capital Mgmt., Inc. v. Fed. Ins. Co*., 274 Fed.

**V.     The FDIC Largely Ignores the Large Body of Favorable Case Law Upholding Professional Services Exclusions in D&O Policies**

The FDIC largely chooses to ignore the numerous decisions cited by Liberty in which courts nationwide have consistently upheld similar PSEs in D&O policies *as a matter of law* where the directors or officers were sued for negligence in the banking, mortgage, or investment context.  See, **Docket Entry No.** 73, pp. 34-39; **Docket Entry No. 102**, pp. 29-40.  *See e.g., David Lerner Assoc. v. Phila. Indem. Ins. Co*., 934 F. Supp. 2d 533, *aff'd* at 2013 U.S. App. LEXIS 23386 (2nd Cir. Nov. 21. 2013) (finding that insured's failure to conduct due diligence in connection with the sale of financial products was barred by the professional services exclusion in a D&O policy "); *Neighborhood Hous. Serv. of Am., Inc. v. Turner-Ridley*, 42 F. Supp. 2d 964 (N.D. Ind. 2010) (finding that insured's negligence in servicing mortgage loans was barred by the professional services exclusion in a D&O policy); *MDL Capital Mgmt., Inc. v. Fed. Ins. Co*., 274 Fed. Appx. 169 (3rd Cir. 2008) (finding that professional services exclusion in D&O policy barred coverage for insured's dereliction of duties as investment adviser and investment manager); *Piper Jaffray Cos. v. Nat'l Union*, 967 F. Supp. 1148 (D. Minn. 1997) (finding that professional services exclusion in a D&O policy barred claims arising from the insured's failure to prudently manage the assets of its investors); *Assoc. Cmty. Bancorp., Inc. v. Travelers, Cos*., 2010 U.S. Dist. LEXIS 34799 (D. Conn. Apr. 7, 2010) (finding that professional services exclusion in a bank D&O policy barred claims for mismanagement of funds in custodial accounts); *Aetna Cas. & Sur. Co. v. Dannenfeldt*, 778 F. Supp. 484 (D. Az. 1991) (finding that claims against the directors and officers of a

---

Appx. 169 (3d Cir. 2008) (professional services exclusion in D&O policy applied to suit by the U.S. Securities and Exchange Commission).

failed savings and loan in connection with the bank's fraudulent sale of debentures were barred by the professional services exclusion).  The sheer number of cases upholding similar professional services exclusions in D&O policies undermines any suggestion by the FDIC that such exclusions are ambiguous or create illusory coverage.[3]

## VI.   Approving Loans is a Professional Service

As discussed in Liberty's MJP briefs, courts have broadly interpreted the (undefined) term "professional services" in an exclusion to mean services requiring specialized knowledge, training, or skill.  See, **Docket Entry No. 73**, pp. 29-31; **Docket Entry No. 102**, pp. 32-35.  Lending and mortgage activities constitute professional services.  *See e.g., PMI Mort. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co*., 394 F.3d 761 (9th Cir. 2005); *Impac Mort. Holdings, Inc. v. Houston Cas. Co*., 2013 U.S. Dist. LEXIS 27190 (Feb. 26, 2013).  See, **Docket Entry No. 73**, p. 30; **Docket Entry No. 102**, p. 33.

The FDIC boldly claims, without citing *any* authority, that making loans is not a professional service because "an ordinary citizen without an ounce of specialized knowledge, skill, or expertise" can make loans.  See, **Docket Entry No. 117**, p. 7.  The FDIC goes so far as to analogize a bank loan to renting an apartment.  ("It is no different than the situation where an individual wants to rent an apartment.").  *Id.* at p. 8.  The fact of the matter is that the FDIC is not suing "an ordinary citizen" (or a landlord).  It is suing the former Directors of a federally regulated national bank.  To suggest that the Director Defendants approved the multi-million dollar bank loans at issue in the FDIC Complaint

---

[3]      The FDIC cites a single case, *Federal Ins. Co. v. Hawaiian Elec. Indus*., 1197 U.S. Dist. LEXIS 24129 (D. Haw. 1997), for the proposition that a professional services exclusion in a D&O policy renders coverage illusory.  See, **Docket Entry No. 117**, p. 10.  Liberty distinguished that case in its Reply Brief.  See, **Docket  Entry No. 102**, p. 37, n. 30.  In particular, the professional services exclusion in *Hawaiian Electric* was much narrower than the PSE in Liberty's D&O Policy.

without any specialized knowledge, skill or expertise defies logic.  If that were so, it is incomprehensible that the FDIC would have permitted Eurobank (or any bank for that matter) to operate as a federally insured financial institution for so many years.

**VII.   The FDIC's Assertion that the Directors Were Not Approving Loans to Bank Customers Is a Fallacy**

The crux of the FDIC's complaint is that the Directors approved bad loans to various borrowers identified in the Complaint.  It is a fallacy for the FDIC to contend that the Directors were not making loans to customers of Eurobank.  See, **Docket Entry No. 117**, p. 6.  *See e.g., Villafane-Neriz v. FDIC*, 20 F.3d 35, 39 (1st Cir. 1994) ("Loans made to bank customers . . . represent obligations on the part of the borrowers to repay sums certain to the bank.").  See, **Docket Entry No. 102**, p. 29.  The FDIC argues, tongue in cheek,  that the Directors were acting on behalf of Eurobank when they approved the Loss Loans, and they were not rendering services to or on behalf of any customer of the Bank.  See, **Docket Entry No. 117**, p. 7.  Obviously, the Directors were rendering a service to a Bank customer when they approved a loan.  Without the Directors' approval, there would be no loan and, hence, no customer.  The fact that the Bank was the lender does not alter the fact that the Directors were also providing a service to the borrower. The two (lender and borrower) go hand in hand.  That is the essence of a loan transaction.

**VIII.   The FDIC Ignores the Supervisory Carve-Out to the PSE**

As discussed in Liberty's Reply Brief, even assuming *arguendo* the Directors were acting in a "supervisory" role when they approved the loans, such acts or omissions are not covered.  See, **Docket Entry No. 102**, p. 38.  The PSE carves-out (or allows) coverage for claims "brought or maintained by a client or customer" of Eurobank "where

such claim is based upon the failure of an Insured Persons to properly supervise or manage such professional services" ("Supervisory Carve-Out").   Here, the FDIC Complaint is not brought or maintained *by* a client or customer of Eurobank.   It is brought by the FDIC.   As such, the Supervisory Carve-Out does not apply even if the FDIC alleged the Directors failed to supervise or manage the loan approval process.

Moreover, as Liberty has already argued, the fact that the PSE contains a broad carve-out for claims by clients or customers undermines any argument that the exclusion creates "illusory" coverage.   <u>See</u>, **Docket Entry No. 102**, pp. 38-40.   The obvious intent of the PSE is to avoid duplicative coverage under other types of insurance policies typically purchased by banks that afford coverage for lending activities and professional services including, but not limited to, **Bankers' Professional Liability** policies and **Lenders' Liability** policies with which the FDIC is no doubt intimately familiar.   Thus, in response to the FDIC's rhetorical question, "so what if the Director Defendants were acting as loan officers?"   The Directors were not acting in a covered capacity under their D&O policy and may have sought coverage under other insurance policies.

## IX.   <u>The FDIC Makes a Futile Attempt to "Amend" its Complaint by Filing its Surreply</u>

As the FDIC concedes, there is a distinction between a directors' "oversight and supervisory" role in setting loan policy versus making a loan.   ("Liberty does cite several cases and an OCC article for the unremarkable proposition that a director has oversight and supervisory responsibility over the bank.   The FDIC has no quarrel with these authorities.").   <u>See</u>, **Docket Entry No. 117**, p. 5.   *See also* cases cited in Liberty's Reply

Brief regarding oversight role of directors.  <u>See</u>, **Docket Entry No. 102**, pp. 23-24.[4]  As explained in the cases cited by Liberty and adopted by the FDIC, key duties of a director in his supervisory or oversight role includes making certain the bank has sufficient internal controls, policies, and procedures in place to enable the directors to monitor the company's business activities.  *Id.*  However, as evidenced by the Complaint, the FDIC is not suing the Directors for their oversight or supervisory role.  Here, in contrast, the very essence of the FDIC's Complaint is that the Directors are liable for personally approving and making bad loans.  In other words, the FDIC is suing the Directors for their own actions in approving each and every Loss Loan.

It bears noting that the FDIC has failed to cite *any* authority for the proposition that approving loans is a typical director duty or covered Wrongful Act in his/her capacity as such.  Instead of addressing this issue, the FDIC attempts to re-plead its complaint via a back-door approach in the guise of a "Surreply" by now arguing – *for the first time* – that the Directors are liable for setting bad loan policy.  ("The directors approved the loan policy, and it contained a requirement that the Directors approve loans that exceeded a certain dollar amount.").  <u>See</u>, **Docket Entry No. 117**, p. 5.  If this were true, then the FDIC would have no basis *at all* for suing the Directors – *i.e.,* the Directors set a loan policy that required them to approve loans in excess of a certain amount which they did.  In other words there is no Wrongful Act.  Clearly, that is not what the

---

[4]      *Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. Ct. 1996); *Wiley v. Stipes*, 797 F.Supp.2d 193 (D.P.R. 2011); *In re First Bancorp Deriv. Litig.*, 465 F.Supp.2d 112 (D.P.R. 2006); *FDIC v. Adams*, 2013 U.S. Dist. LEXIS 165232 (N.D. Ga. Apr. 10, 2013); *Barnes v. Harris*, 2013 U.S. Dist. LEXIS 68465 (D. Utah May 13, 2013); *FDIC v. Baldini*, 2013 U.S. Dist. LEXIS 162033 (S.D. W. Va. Nov. 14, 2013); *FDIC v. Spangler*, 836 F.Supp.2d 778 (N.D. Ill. 2011); *FDIC v. Bierman*, 2 F.3d 1424 (7th Cir. 1993).

Complaint alleges. Nor should the FDIC be permitted to distort its allegations by pleading around coverage.

**X.**     **The IvI Exclusion Bars Coverage Regardless of the "Capacity" in Which the FDIC is Bringing Suit**

The FDIC belatedly recognizes that it has dug itself into a coverage hole by arguing that it can bring suit in "multiple capacities" as the Receiver of a failed bank. However, the FDIC argues itself out of coverage since the IvI Exclusion in Liberty's D&O Policy plainly applies – regardless of the "capacity" in which the suit is brought. The FDIC makes a half-hearted effort to argue that the "in any capacity" language in the IvI Exclusion solely modifies the term "Insured Organization" or "Insured Person." That is not what the exclusion says.

The IvI Exclusion plainly applies to "any Claim brought or maintained by or on behalf of the Insured Organization or any Insured Person, in any capacity, except . . . (e)(1) in the event of the Insured Organization's bankruptcy pursuant to the United States Bankruptcy Code, a Claim by an examiner, trustee, receiver, . . . of the Insured Organization . . . ." The IvI exclusion clearly contemplates that someone *other than* an Insured might assert a Claim "on behalf of" an Insured – *i.e.*, a bankruptcy trustee or receiver.[5] The exclusion means what it says: coverage is barred for Claims brought by a third party acting on behalf of an Insured "in any capacity." It would make no sense for an Insured to sue itself in a different capacity.

Finally, while the FDIC attempts to distinguish the "capacity" language in W. Holdings IvI Exclusion in a case pending before the Hon. Judge Gustavo A. Gelpi, it is

---

[5]     Notably, the FDIC fails to address exception (e)(1) of the IvI Exclusion which speaks directly to claims asserted by any "receiver." As explained in Liberty's Reply Brief, this exception only applies in the context of a bankruptcy proceeding. <u>See</u>, **Docket Entry No. 102**, pp. 20-21.

noteworthy the Judge Gelpi never commented on this particular phrase in the exclusion, notwithstanding his finding that the FDIC acts in multiple capacities.  *W. Holding Co. v. AIG Ins. Co.*, 904 F.Supp.2d (D.P.R. 2012) (1st Cir. Appeal docketed Aug. 21, 2012).

## CONCLUSION

The FDIC's so-called "Surreply" is nothing more than a desperate attempt by the FDIC to "get the last word."  The FDIC has merely re-hashed numerous arguments that it previously made in its opposition brief (see, **Docket Entry No. 88**) and which were addressed in Liberty's MJP Briefs (see, **Docket Entry Nos. 73** and **102**).  The FDIC has failed to show that Liberty raised any uniquely "new" legal arguments in its Joint Reply Brief that were not previously raised in its opening brief or raised in response to arguments made in the FDIC's or Directors' opposition briefs (see, **Docket Entry Nos. 88** and **92**).  Under the circumstances, the FDIC should not be permitted the benefit of filing a Surreply.

**WHEREFORE**, this Court should strike the FDIC-R's Surreply to Liberty's Reply in Support of its Motion for Judgment on the Pleadings, and grant Liberty any other relief this Court deems appropriate and just.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 19TH day of February, 2014.

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

**ADSUAR MUÑIZ GOYCO**
**SEDA & PÉREZ-OCHOA, P.S.C.**
P.O. Box 70294
San Juan, PR 00936-8294
Tel: 787.756.9000
Fax: 787.756.9010
Email: epo@amgprlaw.com
mhaack@amgprlaw.com

By: s/ Eric Pérez-Ochoa
USDC No. 206314

By: s/ Mariel Y. Haack Pizarro
USDC-PR No. 221608

**Anjali C. Das, Esq.**
*Pro Hac Vice* Admitted
**Loren S. Cohen, Esq.**
*Pro Hac Vice* Admitted
**Alicia A. Garcia, Esq.**
*Pro Hac Vice* Admitted
**WILSON,ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
55 W. Monroe Street, Suite 3800
Chicago, IL. 60603
Tel. 312-821-6125/Fax 312-704-0550