IN THE UNITED STATES DITRICT COURT

FOR THE DITRICT OF PUERTO RICO

| | |
|---|---|
| **Federal Deposit Insurance Corporation, as Receiver for Eurobank,**<br><br>Plaintiff<br><br>v.<br><br>**Rafael Arrillaga-Torréns, Jr.;et als**<br><br>Defendants | Case No. 13-01328<br><br>Gross Negligence, Declaratory Judgment, Damages<br><br>Plaintiff Demands Trial by Jury |

**DIRECTOR DEFENDANTS' SUR-REPLY TO LIBERTY'S RESPONSE TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**

TO THE HONORABLE COURT:

**Come now**, codefendants William Torres-Torres; Luis Hernández- Santana; Nora Lopez-Rodríguez; the Hernández-Lopez Conjugal Partnership; Ricardo Levy-Echeandía; Lourdes Arce-Rivera; the Levy-Arce Conjugal Partnership; Antonio Pavía-Bibiloni; Judith Vidal Gómez; the Pavía-Vidal Conjugal Partnership; Pedro Feliciano-Benítez; Juan Gómez-Cuétara; Rocio Gil-Gómez de Liaño; the Gómez-Gil Conjugal Partnership; Plácido González-Córdoba; and Diana Lopez-Feliciano (hereinafter collectively referred to as Director Defendants), and through the undersigned attorneys, respectfully state and pray:

**I. Contrary to Liberty's new argument, the allegations in the Compliant- read in the light most favorable to the Director Defendants- present a plausible claim for coverage in the present case.**

1

The controversy pending before this Honorable Court is: are the allegations in the Complaint -taken as true- support a finding that the claim for insurance coverage in this case is plausible. Zurich Am. Ins., 828 F. Supp. 2d at 467. Liberty's Reply to the Opposition to the Motion for Judgment on the Pleadings [hereinafter "Liberty's Response"] overlooks the applicable standard for review under Fed. R. Civ. Proc. 12(c) making a selective reading of the allegations in the Complaint in order to avoid its obligation to afford coverage in this case.

According to Liberty, the "Insured v. Insured" exclusion applies to this case because the allegations in the Complaint state that the FDIC is **only** asserting the rights of the insured party, the failed Bank. Therefore, Liberty argues that the FDIC is an insured under the policy and thus the exclusion is triggered. In the Complaint, the FDIC expressly alleged the following: "FDIC covered all of the legally qualified deposits of Eurobank […] which loss to the Deposit Insurance Fund is estimated to be $647 million and that the FDIC seeks to recover only a portion of its losses". See, Complaint at page 2. Consequently, it is evident that the FDIC in the present claim is asserting its own rights in seeking to recoup for the losses to the Deposit Insurance Fund as mandated by law. Because the FDIC is representing its own interest in protection of the insurance fund, the FDIC is suing in a different capacity than Eurobank would, had it asserted its own rights. See, Fed. Ins. Electric v. Hawaiian Electric. Indutries, Inc., Not Reported in F. Supp., 1995, 1995 US Dist. Lexis 22595, 1995 WL 1916123,7 (D. Haw. Dec. 15, 1995; see also, Narath v. Exec. Risk Indem; Pennsylvania v. Sentry Sav. Bank, 867 F. Sup. 50 (D. Mass. 1994). Therefore, the FDIC is not an Insured party in the present claim. As a result, a favorable reading of the allegations in the Complaint shows that the "Insured v. Insured" exclusion is not applicable and there is a plausible claim for coverage in this case. Thus, Liberty's motion for judgment on the pleadings must be denied.

It is evident that Liberty could not rebut the above-discussed conclusion and the vast applicable case law cited by the Director Defendants' which demonstrate that the "Insured v. Insured" exclusion does not apply because the FDIC is acting in its receivership capacity and, as such, is not an Insured under the policy. As a consequence of a defeated argument, <u>now</u> Liberty presents before this Honorable Court a new legal theory by which the language of the provision "explicitly states that the exclusion applies to claims by third parties acting "in any capacity". [See Liberty's Response to Opposition, at 17] Accordingly, Liberty understands that the exclusion applies to the FDIC "regardless of the capacity in which the FDIC is bringing suit- including its "corporate capacity or "receiver" capacity".  The pertinent part of the "Insured v. Insured" exclusion reads as follows:

> "Insurer shall not be liable to make any payment for Loss in connection with any Claim:
>
> Brought or maintained by or on behalf of the Insured Organization or any Insured Person, in any capacity…."

A simple reading of the provision makes evident that the phrase "in any capacity" is not applicable to "third parties" as Liberty frivolously contends. What the language of the provision means is that exclusion applies to any claim brought or maintained by or on behalf of an Insured party <u>regardless of the capacity of the Insured</u>. It is clear that the FDIC is not an Insured party under the policy. Thus, the provision does not refer to the capacity in which the FDIC is filing suit. Consequently, the case law cited by the Director Defendants in their Opposition to Motion for Judgment on the Pleadings to argue that the exclusion is inapplicable because the FDIC is suing in its receivership role is pertinent and applicable to the present case. Pursuant to the prevalent case law and as correctly decided by Judge Gelpi in <u>W. Holding Co. v. Chartis Ins. Co. et al</u>, 904 F. Supp. 2d 169 (D.P.R. 2012), where the FDIC is asserting various interests different

than that of the failed institution, a finding of the FDIC as bringing a claim "on behalf of" and insured party is inapplicable. See, W. Holding, id. A favorable reading of the allegations in the Complaint show that the "Insured v. Insured" exclusion is not triggered and there is coverage for the FDIC's claims.

**II. Liberty is plainly wrong when it asserts that the allegation regarding the approval of loans by Directors triggers the "Professional Services" exclusion.**

Liberty's creativeness to evade its contractual responsibility does not stop with its irrational interpretation of the "Insured v. Insured" exclusion. It is a fact that Liberty could not rebut the well-reasoned conclusion that the purpose of the D&O policy is to protect directors and officers from individual liability for suits <u>arising out of the business decisions that they must make in their capacity as Directors</u>. Therefore the alleged acts of improper business management, negligence, error and breach of the fiduciary duty regarding the approval of loans. fall within the general grant of coverage under the policy. Because of this stone on the road to a finding of exclusion, now Liberty makes up a definition of what is the "traditional role" of a director in order to argue that by approving the loans the Directors "stepped out of their traditional oversight role and into the role of a credit officer or loan officer". Consequently, Liberty argues that by doing so the Directors were not acting in their capacity as such and are excluded under the "professional services exclusion".

First, there is no provision in the policy where the wrongful acts covered under the insurance contract are defined as to exclude the approval of loans by Directors. A "wrongful act" is defined in the policy as "any actual or alleged error, misstatement, misleading statement act, omission, neglect or breach of duty, actually or alleged committed or attempted by the Insured Persons in their capacity as such." See, D&O Policy, section 25.10(a). It is evident that the

Policy does not define wrongful acts as to cover only the acts performed by the Directors under a so called "traditional oversight role". The policy covers **any** error, omission, neglect, breach of duty by the Directors in their capacity as such. A reasonable and favorable reading of the allegations against the Directors brought by the FDIC, makes clear that they include claims for improper business management, negligence, error and breach of the fiduciary duty regarding the approval of loans. See, FDIC Complaint, Docket No. 1, ¶ 79-81. This alleged acts fall within the general grant of coverage under the policy and are precisely the "wrongful acts" that the policy intended to cover. Moreover, nowhere in the policy is the approval of loans excluded as a wrongful act. This alone demonstrates that there is a plausible claim for coverage in this case that precludes a dismissal under Rule 12 (c).

Second, there is no legal authority or binding case law that supports the definition of "traditional oversight role" created by Liberty which limits the role of a Director as to exclude the credit approval process. To support the claim that the approval of loans by Directors is out of their traditional role, Liberty cites an internet article by the Executive Director of the American Association of Bank Directors (hereinafter "AABD"). First, we must stress the fact that this internet article is not a legal authority, and thus, has no binding effect. Additionally, this article, which is merely an opinion of the Executive Director of the AABD, is not part of the pleadings and cannot be used by the Court to determine the plausibility of the claim for coverage in this case. See, <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co</u>., 267 F.3d 30, 33 (1st Cir. 2001); <u>Haley v. City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011). Notwithstanding the above, the article does not establish that the approval of loans is not part of the common duties performed by Bank Directors as Liberty contends. On the contrary, because the approval of certain loans <u>is a common and traditional task of Directors</u>, the AABD felt the need to advice Directors to "get out

of the business of approving loans" to avoid potential lawsuit when a Bank fails. In other words, the article does not establish that when a Director approves a loan, is not acting in their capacity as Director. Other articles confirm the fact that there is a common practice among bank Directors to participate in the approval of loans and that there is a sector of the industry advisors that belief that "directors have a duty to consider and approve (or decline to approve) certain credits that are or would be material to the bank". [1] The fact that approving loans is a risky role does not imply that when doing so the Directors are not acting in their capacity as such.

Third, contrary to Liberty's contention, there is no such thing as a particular or specified "traditional role" of Bank Directors. The duties and responsibilities of a Director must be evaluated case by case pursuant to the By-Laws and policies of the financial institution. According to the allegations in the Complaint, the Directors approved a loan policy which required Directors to approve loans that exceeded certain amount. See, Complaint, paragraph 20. This loan approval was done by Directors as part o their duties and in their Director's capacity as required by the bank's loan policy.

Even if we accept as true the definition of "traditional role" of Directors as expressed by Liberty, the approving of the loans alleged in the complaint is an essential part of that "traditional oversight role" in particular when it comes to important credit decisions of the institution. As previously indicated, a sector of the industry believes that it is a duty of Directors "to consider and approve (or decline to approve) certain credits that are or would be material to the bank". Id.  Hence, even under Liberty's own argument the approval of loans by Directors as

---

[1] See, Bank Director, FDIC Lawsuits Avoiding the Worst Outcome (June 2012) available at http://www.bankdirector.com/index.php/board-issues/legal/fdic-lwasuits.

alleged in the Complaint falls within the grant of coverage of the policy because such act was part of the "traditional role" of Directors.

Finally, Liberty's new theory regarding the capacity in which the Directors allegedly approved the loans at issue in this case and the assertion that by doing so the Directors were acting as loan officers is outside the pleadings and brings forth an issue of fact regarding the act of approving loans performed by the Directors that precludes resolution of the present controversy under Rule 12(c). Liberty invites this Court to consider facts that have not been included in the Complaint in a Motion to Dismiss under Rule 12(c).  This is simply impossible.  The Court is confined by the facts alleged in the complaint, therefore any legal argument brought forth by Liberty that rests on alleged facts included in a Rule 12(c) motion cannot be considered and the Court has to restrain from entertaining said legal arguments.  If any controversy is raised regarding the role of the Director Defendants *vis a vis* if they were acting as loan officers or as directors is an issue of fact that can only be adjudicated through a motion for summary judgment or by a jury, not under a Rule 12 motion. At this stage of the proceedings, the court is obliged to accept as true all factual allegations in the complaint and cannot go beyond the pleadings to evaluate disputed issues of fact. See, United States v. 323 "Quintales" of Green Coffee Beans, 2012 U.S. Dist. LEXIS 47765 (D.P.R. Mar. 9, 2012).

**III. Liberty's new construction of the "professional services exclusion" renders the policy illusory.**

In a failed effort to rebut the fact that the application of the exclusion –as constructed by Liberty- would vitiate the coverage provided by the policy, Liberty now raises in its Response Memorandum that in any case, the "Supervisory Carve-Out to the PSE expressly affords coverage for certain claims by a customer, where such claim is based upon the insured's  failure

to supervise or manage such professional services, or based upon the improper disclosure (or non-disclosure) of material information relating to such professional services". See, Liberty's Response at 40. In other words, according to Liberty the acts covered by the policy are established by a provision of exclusion of coverage.  As was discussed in Directors Defendants' Opposition to Motion for Judgment on the Pleadings, this expansive interpretation of the policy is irrational and contrary to what other courts have held. (Federal Ins. Co. v. Hawaiian Electric Industries, Inc., 1997 U.S. Dist. Lexis 24129 at 34 (D. Haw. December 23, 1997) "Such an expansive interpretation is not reasonable because it would have the effect of vitiating virtually all of the coverage provided by a D&O policy, the purpose of which is to cover any wrongful act committed by an officer or director in their capacity as an officer or director".) Liberty's expansive interpretation of the "professional services" has the effect of negating the purpose of the policy which was to cover any wrongful act committed by the Directors in their capacity as such. Liberty's position is simply implausible, since they posit that the exception ("supervisory carve out") to the professional services exclusion is the only coverage available to the insured. This is not a reasonable construction of the policy and would frustrate the very essence of the D&O policy. Fed. Ins. Co. v. Hawaiian, supra at 34.  If the court were to accept this interpretation, then the principal purpose of the coverage would be void.

  Wherefore, for the above-discussed reasons and those set forth in Director Defendants' Reply in Opposition to Motion for Judgment on the Pleadings, the appearing party respectfully requests that the Court **DENY** the Motion for Judgment on the Pleadings filed by Liberty.

  Respectfully submitted in San Juan, Puerto Rico this 19th of February, 2014.

**Certification**: I certify that on this date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system, which will automatically send notification of this filing to all counsel of record.

**Sifre & Muñoz-Noya, PSC**
P.O. Box 00936
San Juan, Puerto Rico  00936
Phone: 787-756-7880; Fax: 787-753-6580

*s/Jaime Sifre Rodríguez*
Jaime Sifre Rodriguez
USDC No. 117409
jsifre@sbsmnlaw.com

*s/Adrián Sánchez Pagán*
Adrián Sánchez Pagán
USDC-PR No. 223311
asanchez@sbsmnlaw.com

*s/Rosa L. Irizarry Millán*
Rosa L. Irizarry Millán
USDC-PR No. 228810
ririzarry@sbsmnlaw.com